## CLARK v. CLARK ET AL.

[76 South. 638, Division B.]

1. MARRIAGE. *Capacity to marry. Prior marriage.*
   A man already married and not divorced cannot marry another and a purported marriage between them was void, even without divorce.

2. SAME.
   In such case the second wife could legally marry another without obtaining a divorce from such pretended husband.

APPEAL from the chancery court of Kemper county.
HON. A. Y. WOODWARD, Chancellor.

Bill by Albert Clark and others against Mandy Clark. From a judgment for complainants, defendant appeals.

The facts are fully stated in the opinion of the court.

*G. J. Rencher* and *Geo. Butler,* for appellant.

*J. H. Daws* and *W. C. Well,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

Albert Clark and others filed a bill in the chancery court of Kemper county against Mandy Clark, alleging that Nero Clark, deceased, departed this life intestate seised

and possessed of certain property in Kemper county, and that the complainants were brothers and sisters and descendants of brothers and sister of Nero Clark, deceased. They allege that the defendant, Mandy Clark, is claiming an interest in the said lands by virtue of the pretended marriage to the deceased, Nero Clark, and aver that such pretended marriage was void because the defendant, Mandy Clark, at the time of the ceremonial marriage with Nero Clark was lawfully married to Daniel Savior by virtue of a valid and ceremonial marriage, and prayed for an order of court canceling the claim of Mandy Clark as to the land and for an order of sale of the land for division among the complainants.

The defendant, Mandy Clark, denied that the complainants were the only heirs of Nero Clark, but admitted the kinship set out in the bill of complaint, admits that Nero Clark was the owner of the land described, but denied that the complainants were his heirs in the sense of inheriting the property, and avers that she is the sole heir of the said Nero Clark. She denies that she was ever lawfully married to Daniel Savior, but asserts that she was lawfully married to Nero Clark. The bill was not sworn to, and did not waive answer under oath, and the answer was sworn to. Subsequent to the filing of the answer the defendant filed an amended answer and cross-bill. In this amended pleading she charges that at the time she and Daniel Savior undertook to marry the said Daniel Savior had a living wife from whom he had not been divorced, and that this was not known to the defendant, and that as soon as she found out she was not legally married, she quit the said Daniel Savior.

The complainant proved by witnesses the ceremonial marriage between Daniel Savior and Mandy Burrage, now Mandy Clark, who is the defendant and appellant in this cause. The defendant proved by a nephew of Daniel Savior that Daniel Savior was married in Leake county to a woman named Martha, and that he and Martha were recognized as husband and wife in the community in which they lived, and by the friends and relatives of Dan-

iel Savior; that such marriage between Daniel Savior and Martha occurred some time after the surrender, or close of the late Civil War, and that some time thereafter Daniel Savior got into some trouble with the white people in his community and left the county. The witness, who was a nephew of Daniel Savior, also left the county with his family and moved into Winston county. He testifies that his uncle, Daniel Savior, visited him subsequent to such date and subsequent to the date which it was charged he was married to Mandy, the appellant, and that at the time of such visit his Aunt Martha, wife of Daniel, was still living. The children of Daniel Savior and the appellant, Mandy, testified that, many years after the marriage ceremony was performed between Daniel Savior and Mandy, a nephew of Daniel Savior came to Kemper county, and that Daniel Savior and nephew went to Newton or Scott county and visited the former wife of Daniel Savior, staying over there some several weeks, and returned home and informed Mandy that he was going to live with his "real wife," Martha, and was going to carry the children with him. This caused a riot in Israel, resulting in the appellant ceasing to live with Daniel Savior. These children also testify that afterwards Daniel Savior learned that Martha was dead, and married a woman in Kemper county known as Emma McCoy or Emma McWilliams, and that he contracted the said marriage prior to the marriage of Mandy with Nero Clark, and Daniel Savior continued to live with the McCoy or McWilliams woman until his death, which occurred about the same time as the death of Nero Clark. Other witnesses for the defendant testified that Daniel Savior admitted to them subsequent to his marriage with Mandy, and after their separation, that he had a living wife in Newton county, and that it was known and reputed in the community in which Daniel lived that he had a living, undivorced wife. The appellees took the deposition of the circuit clerk of Leake county, who examined the marriage records of such county from 1850 to 1886, which dates

covered the period in which it is alleged that Savior lived with and was married to the woman Martha, but the clerk knew nothing of the parties, and knew nothing of whether there was any marriage entered into between said parties which did not appear of record. The questions to the circuit clerk were propounded with reference to the marriage of Daniel Savior. The witness, who was a nephew of Daniel called himself Savial, and it does not appear which was the true or correct name, Savial or Savior. There is no proof in the record contradicting the testimony of Savial, but such testimony is rather strengthened by proof in the record that Daniel Savior died at the home of his son in Jackson, Miss., who seems to have been the son of the woman Martha, though this does not clearly appear.

We do not think it necessary to go into a consideration or discussion of the conflicting presumptions that would arise from these multitudinous marriages, but we think the proof shows without contradiction that Daniel Savior had a living wife at the time of the alleged marriage with Mandy, and that there was no divorce from such wife. It follows that he was not capacitated to enter into a marriage with Mandy, and that the alleged marriage between him and Mandy was void. This being true, it was not necessary for Mandy to procure a divorce from Daniel to make her marriage with Nero Clark valid, as she and Nero Clark were legally married and were recognized as husband and wife in the community where all the parties lived, for a period of about ten years.

We think her marriage with Nero Clark was valid on the proof in this record, and that the chancellor erred in decreeing the property to the complainants and in canceling the claim of appellant to the estate of Nero Clark. The judgment is therefore reversed, and the bill of complaint dismissed.

*Reversed and dismissed.*